**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

DANIEL ALDANA, *individually and on behalf of all others similarly situated,*

Plaintiff,

v.

ACCESS TELECARE, LLC,

Defendant.

Civil Action No. 3:24-cv-03254

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ACCESS TELECARE, LLC'S MOTION TO DISMISS AND MOTION TO STRIKE PLAINTIFF'S CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**


I. INTRODUCTION .......... 1

II. RELEVANT FACTUAL ALLEGATIONS .......... 1

III. ARGUMENT .......... 2

A. Plaintiff's Claims Should Be Dismissed for Lack of Article III Standing .......... 2

i. Plaintiff Bears the Burden of Establishing Standing .......... 3

ii. Plaintiff Must Show Injury-In-Fact .......... 3

iii. Plaintiff Does Not Have Article III Standing to Seek Damages. .......... 4

iv. Mitigation Efforts Do Not Establish An Injury-In-Fact Under Article III .......... 7

v. Plaintiff Cannot Show Standing Through Alleged Diminution in Value of Personal Information .......... 8

B. Plaintiff Failed to State A Claim Upon Which Relief Can be Based .......... 9

i. Choice of Law .......... 9

ii. Plaintiff Failed to State a Claim for Negligence .......... 10

iii. Plaintiff Failed to State a Claim for Negligence *Per Se* .......... 12

iv. Plaintiff Failed to State a Claim for Breach of Third-Party Beneficiary Contract .......... 14

v. Plaintiff Failed to State a Claim for Unjust Enrichment .......... 16

vi. Plaintiff Failed to State a Claim for Breach of Fiduciary Duty .......... 18

C. Alternatively, Immaterial and Impertinent Allegations Should be Stricken .......... 19

IV. CONCLUSION .......... 20

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Acara v. Banks*,
470 F.3d 569 (5th Cir. 2006) ........ 13

*Almon v. Conduent Bus. Servs., LLC*,
2022 WL 902992 (W.D. Tex. Mar. 25, 2022) ........ 6

*Ambrosio v. Carter's Shooting Ctr., Inc.*,
20 S.W.3d 262 (Tex.App.-Houston 2000, pet. denied) ........ 12

*Armstrong v. Southwest Airlines Co.*,
2021 WL 4391247 (N.D. Tex.-Dallas Sept. 24, 2021) ........ 13

*Arquero v. McGinnis Tessitore Wutscher LLP*,
2013 WL 12393918 (W.D. Tex. Feb. 5, 2023) ........ 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 9

*Austin v. Duval*,
735 S.W.2d 647, (Tex.App.-Austin 1987, writ denied) ........ 16

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2009) ........ 9

*Benchmark Elecs. v. J.M. Huber Corp.*,
343 F.3d 719 (5th Cir. 2003) ........ 9, 10

*Brazosport Bank v. Oak Park Townhouses*,
889 S.W.2d 676 (Tex.App.-Houston [14th Dist.] 1994, writ denied) ........ 18

*Bruno v. Robert Donohoe, as Trustee of the Texas Medical Liability Trust*,
2024 WL 5305079 (W.D. Tex. Oct. 25, 2024) ........ 15, 17

*City of Dallas v. Vills. of Forest Hills, L.P., Phase I*,
931 S.W.2d 601 (Tex.App.-Dallas 1996, no writ) ........ 16, 19

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ........ 3, 4, 8

*Corpus Christi Bank and Trust v. Smith*,
525 S.W.2d 501 (Tex. 1975) ........ 14

*DynaStudy, Inc. v. Houston Indep. Sch. Dist.*,
325 F. Supp. 3d 767 (S.D. Tex. 2017) .......... 19

*Greater Houston Transp. Co. v. Phillips*,
801 S.W.2d 523 (Tex. 1990) .......... 10

*Green v. eBay, Inc.*,
2015 WL 2066531 (E.D. La. May 4, 2015) .......... 8

*Heldenfels Bros., Inc. v. City of Corpus Christi*,
832 S.W.2d 39 (Tex. 1992) .......... 16

*Home Builders Ass'n of Miss., Inc. v. City of Madison*,
143 F.3d 1006 (5th Cir. 1998) .......... 3

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*,
2021 WL 5937742 (D.N.J. Dec. 16, 2021) .......... 7, 8

*In re ESO Solutions, Inc. Breach Litigation*,
2024 WL 4456703 (W.D. Tex. July 30, 2024) .......... Passim

*In re Samsung Data Security Breach Litig.*,
2025 WL 271059 (D. N.J. Jan. 3, 2025) .......... 8

*Johnson v. Sawyer*,
47 F.3d 716 (5th Cir. 1995) .......... 13

*Jones v. Blume*,
196 S.W.3d 440 (Tex.App.–Dallas 2006, pet. denied) .......... 18

*Krottner v. Starbucks Corp.*,
406 F. App'x 129 (9th Cir. 2010) .......... 11

*Legg v. Leaders Life Ins. Co.*,
574 F. Supp. 3d 985 (W.D. Okla. 2021) .......... 6, 7, 8, 11

*Lincoln v. Turner*,
874 F.3d 833 (5th Cir. 2017) .......... 9

*Logan, et al. v. Marker Group, Inc.*,
2024 WL 3489208 (S.D. Tex. July 18, 2024) .......... Passim

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 3

*Maddox v. Vantage Energy, LLC*,
361 S.W.3d 752 (Tex.App.-Fort Worth 2021, pet denied) .......... 14

*McCombs v. Delta Grp. Elecs., Inc.*,
676 F.Supp.3d 1064 (D.N.M. 2023) .......... 11, 12

*MCI Telecomms. Corp. v. Texas Util. Elec. Co.*,
995 S.W.2d 647 (Tex. 1999) .......... 14, 15

*Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't of Transp.*,
879 F.3d 339 (D.C. Cir. 2018) .......... 5

*Perrill v. Equifax Info. Servs., LLC*,
205 F.Supp.3d 869 (W.D. Tex. 2016) .......... 9

*Peters v. St. Joseph Servs. Corp.*,
74 F.Supp.3d 847 (S.D. Tex. 2015) .......... 6

*Pulliam v. West Technology Group, LLC*, 8:23-cv-159,
2024 WL 356777 (D. Neb. Jan. 19, 2024) .......... 12

*Reeder v. Daniel*,
61 S.W.3d 359 (Tex. 2001) .......... 13

*Reynolds v. Murphy*,
188 S.W.3d 252 (Tex.App.-Fort Worth 2006, pet. denied) .......... 12

*S. Elec. Servs., Inc. v. City of Houston*,
355 S.W.3d 319 (Tex.App.-Houston [1st Dist.] 2011, pet. denied) .......... 16, 19

*Sanchez v. Bank of S. Tex.*,
494 F.Supp.3d 421 (S.D. Tex. 2020) .......... 16

*Smith v. American Pain and Wellness, PLLC*,
2024 WL 4028050 (E.D. Tex. Sept. 3, 2024) .......... 13

*Sojitz Energy Venture, Inc. v. Union Oil Co. of California*,
394 F.Supp.3d 687 (S.D. Tex. Houston Div. 2019) .......... 14

*Solomon, et al. v. Deer Oaks Mental Health Associates, P.C. d/b/a Deer Oaks Behavioral Health*,
2024 WL 4907072 (W.D. Tex. Sept. 30, 2024) .......... 6

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 3

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .......... 4

*Storm v. Paytime, Inc.*,
90 F. Supp. 3d 359 (M.D. Pa. 2015) ........................................ 12

*Tarasiewicz v. PNC Bank*,
2023 WL 2940025 (W.D. Tex. Apr. 13, 2023) ........................................ 14

*Tawes v. Barnes*,
340 S.W.3d 419 (Tex. 2011) ........................................ 14

*Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*,
300 S.W.3d 348 (Tex.App.-Dallas 2009, pet. denied) ........................................ 16

*TransUnion, LLC v. Ramirez*,
594 U.S. 413 (2021) ........................................ Passim

*Walters v. Blue Cross and Blue Shield of Texas, Inc.*,
2022 WL 902735 (N.D. Tex. Mar. 28, 2022) ........................................ 13

*Waxler v. Household Credit Servs., Inc.*,
106 S.W.3d 277 (Tex. App.-Dallas 2003, no pet.) ........................................ 10

*Zavala v. Trujillo*,
883 S.W.2d 242 (Tex.App.-El Paso 1994, writ denied) ........................................ 12

**Statutes**

15 U.S.C. § 45 ........................................ 13

Article III of the United States Constitution ........................................ Passim

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ........................................ 1, 2, 20

Federal Rules of Civil Procedure 12(b)(6) ........................................ 1, 20

Federal Rules of Civil Procedure Rule 12(f) ........................................ 1, 19, 20

**Regulations**

45 C.F.R. § 164 ........................................ 13

**Other Authorities**

Restatement (Second) of Conflict of Laws § 145(2) (1971) ........................................ 10

## I. INTRODUCTION

Plaintiff Daniel Aldana ("Plaintiff") has not been victim of identity theft. There are no allegations in the Class Action Complaint ("Complaint") that cybercriminals used his information to commit fraud or any other type of nefarious scheme. Further, the Complaint is silent as to whether Plaintiff suffered any type of actual economic harm stemming from the data security incident suffered by Defendant Access TeleCare, LLC ("Access TeleCare" or "Defendant"). Accordingly, Plaintiff has not suffered any injuries-in-fact and does not have standing to bring this putative class action lawsuit under Article III of the United States Constitution. The Court should dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

Even if Plaintiff had standing to pursue this lawsuit, he failed to plead sufficient facts to state a claim for any of the causes of action asserted in the Complaint. The Complaint should therefore also be dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). If the Court does not dismiss the Complaint, it should strike the immaterial and impertinent allegations concerning identity theft that have nothing to do with the parties or facts of this case pursuant to Rule 12(f).

## II. RELEVANT FACTUAL ALLEGATIONS

"Defendant is a provider of telemedicine" with its principal place of business in Dallas, Texas. Compl. ¶¶ 3, 31. Plaintiff alleges that he "received telemedicine care in the past but is unaware how Defendant obtained his Private Information." *Id.* at ¶ 22. On January 8, 2024, "Access TeleCare discovered suspicious activity relating to an employee's e-mail account." (the "Incident"). *Id.* at ¶ Exhibit A.[1] In its notification letter to Plaintiff, Access TeleCare stated that

[1] Plaintiff alleges in the Complaint that "On January 8, 2024, Defendant became aware of a ransomware attack on its systems." Compl. ¶ 51. The Notice letter attached as Exhibit A shows that the Incident was an e-mail compromise, and not a ransomware event.

the following information was present in the affected email account: "your name, date of birth, medical record number, medical information, treatment information, clinical information, provider location, and provider name" (collectively, "PHI"). *Id.*

Plaintiff Aldana is a California resident. *Id.* at ¶ 21. Plaintiff asserted boilerplate allegations throughout the Complaint with conclusory claims based on diminution in value of Private Information, violation of privacy rights, and "risk of identity theft and fraud." *Id.* at ¶ 28. A large portion of Plaintiff's Complaint includes generalizations related to other data incidents, statistics from various websites or blogs, and opinions from the Internet about data incidents. *Id*. at ¶¶ 38-48, 53-54. Much of the data cited is outdated and some of the websites do not reflect the date of publication or date the website was last visited.

Based on these generic and wholly conclusory allegations, the Complaint asserts causes of action for (1) negligence and negligence *per se*; (2) breach of third-party beneficiary contract; (3) unjust enrichment; and (4) breach of fiduciary duty. *Id.* at ¶¶ 124-174. Plaintiff has not alleged any specific instances of actual misuse or any economic harm traceable to the Incident because the impacted information does not include PHI that could lead to identity theft or economic harm. As such, his claims should be dismissed with prejudice.

## III. ARGUMENT

### A. Plaintiff's Claims Should Be Dismissed for Lack of Article III Standing

Plaintiff failed to sufficiently plead any factual material showing that he suffered concrete injuries-in-fact sufficient to give rise to standing under Article III of the United States Constitution. The Court should therefore dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

### i. Plaintiff Bears the Burden of Establishing Standing

Article III limits the jurisdiction of federal courts to “cases” and “controversies.” U.S. Const. art. III, § 2. To have standing under Article III, a plaintiff must show each of the following elements: (1) an injury-in-fact; (2) a traceable causal connection between the injury and the conduct complained of; and (3) that it is likely, as opposed to merely speculative, that the injury will be “redressed by a favorable decision.” *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). “Standing is an essential and unchanging part of the case-or-controversy requirement of Article III.” *Id*. at 560.

“A case is properly dismissed for lack of subject matter jurisdiction when [a federal] court lacks the statutory or constitutional power to adjudicate the case.” *Home Builders Ass’n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal citation omitted). “As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing.” *TransUnion, LLC v. Ramirez*, 594 U.S. 413, 430 – 431 (2021). A plaintiff must demonstrate standing “with the manner and degree of evidence required at the successive stages of the litigation,” including at the pleading stage. *Lujan*, 504 U.S. at 561.

### ii. Plaintiff Must Show Injury-In-Fact

To have standing to sue, a plaintiff must have suffered an injury-in-fact that is concrete, particularized, and actual or imminent, not merely conjectural or hypothetical. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 330 (2016); *Clapper v. Amnesty Int’l USA*, 568 U.S. 398, 416 (2013). “For an injury to be ‘particularized,’ it ‘must affect the plaintiff in a personal and individual way.’” *Spokeo*, 578 U.S. at 330 – 331 (quoting *Lujan*, 504 U.S. at 560 n.1). As for concreteness, “[a] concrete injury must be *de facto*; that is, it must actually exist.” *Id.* (internal citations and quotation marks omitted). In other words, it must be “real, and not abstract.” *Id*. (internal citations and quotation marks omitted). Because an injury-in-fact cannot be conjectural or hypothetical, mere

"[a]llegations of possible future injury are not sufficient." *Clapper*, 568 U.S. at 409. "Under Article III, federal courts do not adjudicate hypothetical or abstract disputes." *TransUnion*, 594 U.S. at 423.

**iii. Plaintiff Does Not Have Article III Standing to Seek Damages.**

Plaintiff failed to carry his burden to establish standing to pursue this case under Article III. According to the allegations in the Complaint, Plaintiff has not suffered any actual injury, such as identity theft. Because a plaintiff must have already suffered an injury-in-fact in order to have Article III standing in a case for damages, Plaintiff's claims should be dismissed.

Plaintiff has not alleged facts showing that he suffered an "actual or imminent" harm fairly traceable to the Incident as required to establish Article III standing. *Logan, et al. v. Marker Group, Inc*., No. 4:22-cv-00174, 2024 WL 3489208, *5 – 6 (S.D. Tex. July 18, 2024) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)). Plaintiff does not allege that he was a victim of identity theft, unreimbursed financial fraud, or any other concrete harm. Plaintiff claims he and class members are at an increased *risk* of fraud, misuse, and identity theft. Compl. ¶¶ 12-15. A "risk" of identity theft is not identity theft or fraud.

Simply put, Plaintiff failed to allege any harm that can confer standing. In *TransUnion*, the Supreme Court clarified the standard that a plaintiff must meet when seeking to establish standing on the basis of a potential future injury. In assessing whether the risk of future harm can constitute an injury-in-fact under Article III, the Supreme Court distinguished between claims seeking injunctive relief and claims seeking monetary damages, finding that in a suit for damages, the mere risk of future harm, without more, cannot qualify as a concrete harm sufficient to establish standing. *TransUnion*, 594 U.S. at 436. Instead, the Court held that a plaintiff must show that the harm actually materialized. *Id.*

In reaching its conclusion, the Supreme Court likened the statutory violation underlying the *TransUnion* plaintiffs' claimed injuries to the common law tort of defamation and explained that "there is 'no historical or common-law analog where the mere existence of inaccurate information, absent dissemination, amounts to concrete injury.'" *Id.* at 434 (quoting *Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't of Transp.*, 879 F.3d 339, 344 (D.C. Cir. 2018)). In rejecting the argument that risk of future disclosure of a credit report could serve as a concrete harm constituting an injury-in-fact satisfying Article III, the Supreme Court agreed with the argument TransUnion advanced:

> [I]f an individual is exposed to a risk of future harm, time will eventually reveal whether the risk materializes in the form of actual harm. If the risk of future harm materializes and the individual suffers a concrete harm, then the harm itself, and not the pre-existing risk, will constitute a basis for the person's injury and for damages. If the risk of future harm does *not* materialize, then the individual cannot establish a concrete harm sufficient for standing[.]

*TransUnion*, 594 U.S. at 436 (emphasis in original). Similarly, in this case, Plaintiff alleged that his information may have been accessible without authorization during the Incident, but no allegations of concrete injury exist until it can be proven that information was actually misused in some way.

In 2024, two district courts in Texas dismissed the plaintiffs' claims in data privacy class actions for lack of Article III standing. In *Logan*, the Southern District of Texas held that two named plaintiffs lacked Article III standing because they did not allege any concrete injury from the data privacy incident. *Logan*, 2024 WL 3489208, *5 – 6. Both plaintiffs' primary allegations of harm stemmed from the receipt of spam messages. *Id*. The court held that no harm resulted from the receipt of spam messages and relied on other courts from across the country which found that similar spam allegations do not "plausibly suggest" any actual misuse of a plaintiff's personal

identifying information occurred. *Id.* (citing *Legg v. Leaders Life Ins. Co.*, 574 F. Supp. 3d 985, 993 (W.D. Okla. 2021)). The court further determined the two plaintiffs failed to establish standing on the speculative risk of current or future identity theft, that their purported mitigation efforts were insufficient to confer standing, and rejected their argument for the diminution in value of personally identifiable information. *Id.* at *6 – 7. Finally, the *Logan* court explained that even if the plaintiffs allegations of harm "could constitute a sufficient injury-in-fact, they would still 'fail to meet the causation and redressability elements of a standing test.'" *Id*. at *5 (quoting *Peters v. St. Joseph Servs. Corp.*, 74 F.Supp.3d 847, 857 (S.D. Tex. 2015)); *see also Almon v. Conduent Bus. Servs., LLC*, No. 5:19-cv-01075, 2022 WL 902992, at *23 (W.D. Tex. Mar. 25, 2022) (determining the plaintiffs lacked standing to assert claims in a data privacy class action because they could not "establish a causal connection between their injuries and the alleged data breach.").

In *Solomon*, the Western District of Texas determined that the plaintiffs' allegations of harm that centered on uncompensated personal time, out of pocket expenses, damages to and diminution in value of information, anxiety, violation of privacy rights, loss of benefit of the bargain, and increased risk of future harm, were all insufficient to confer Article III standing. *Solomon, et al. v. Deer Oaks Mental Health Associates, P.C. d/b/a Deer Oaks Behavioral Health*, No. SA-23-cv-1465-FB, 2024 WL 4907072, *4 (W.D. Tex. Sept. 30, 2024). The court largely based its holding on the court's reasoning in *Logan*, *supra*, and determined the plaintiffs lacked subject matter jurisdiction. *Id*. These cases are consistent with the Supreme Court's holding in *TransUnion* that risk of future harm is not sufficient to confer standing in a case for monetary damages. *TransUnion*, 594 U.S. at 436.

As one decision noted, "[g]iven the holding in *TransUnion*, it is far from clear that any case finding a concrete injury based merely on an abstract risk of future identity theft following a

data breach is still good law, at least with respect to a claim for damages." *Legg*, 574 F.Supp.3d at 993. Indeed, in data privacy class actions since *TransUnion*, courts have found plaintiffs lack Article III standing where their purported injuries-in-fact consist of the risk of future identity theft. *See id*. (dismissing case where "Plaintiff only pleads facts showing that there is a non-imminent risk of possible future injury following the data breach, [which] is not sufficient to confer standing"); *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig*., No. 19-2904, 2021 WL 5937742, at *10 (D.N.J. Dec. 16, 2021) (dismissing claims brought by plaintiffs alleging risk of future identity theft who "fail to account for . . . the Supreme Court's recent admonition that an unmaterialized risk of future of harm cannot confer standing in a claim for damages").

This Court should follow the *Logan* and *Solomon* opinions and dismiss Plaintiff's claims because he does not have Article III standing to seek monetary damages.

**iv. Mitigation Efforts Do Not Establish An Injury-In-Fact Under Article III**

Attempting to allege some type of redressable injury, Plaintiff also claims he and class members "must now closely monitor their financial accounts to guard against future identity theft and fraud," change passwords and sign up for credit and identity theft monitoring services. Compl. ¶ 15. But if the risk of future identity theft itself cannot establish standing, Plaintiff cannot manufacture standing by incurring self-imposed costs. Although Plaintiff generally alleges that he has suffered and will continue to suffer monetary loss, loss of time and productivity from mitigation efforts, and economic harm, he has not included any specific factual allegations regarding how he has incurred monetary losses. *Id*. at ¶ 16. His claims remain impermissibly generic and devoid of any specific allegations.

Even if they had included such allegations, a plaintiff cannot "manufacture standing" simply by "incur[ing] certain costs as a reasonable reaction to a risk of harm." *Clapper*, 568 U.S. at 416. Here, where the harm of identity theft failed to materialize in over a year since the Incident, Plaintiff cannot use mitigation efforts to create Article III standing where it does not already exist. "Thus, while it may have been reasonable to take some steps to mitigate the risks associated with the data breach, those actions cannot create a concrete injury" sufficient to confer standing to seek damages. *Legg*, 574 F.Supp.3d at 994.

**v. Plaintiff Cannot Show Standing Through Alleged Diminution in Value of Personal Information**

Plaintiff argues he suffered injuries in the form of "damage to and diminution in the value of Private Information." Compl. ¶¶ 28, 97. Plaintiff has not—and cannot—offer any factual support for this argument.

The decisions that have accepted diminution in value of personal information to establish standing "involved circumstances where the defendants collected information that was itself monetized and used for commercial purposes." *In re Am. Med. Collection Agency*, 2021 WL 5937742, at *10. "The [Complaint] here contains no similar allegation. Absent such circumstances, there is no loss of value in the information sufficient to state a concrete injury." *Id.*; *see also Green v. eBay, Inc.*, No. 14-1688, 2015 WL 2066531, n.59 (E.D. La. May 4, 2015) ("Plaintiff has failed to allege facts indicating how the value of his personal information has decreased as a result of the Data Breach"); *In re Samsung Data Security Breach Litig.*, No. 1:23-md-03055, 2025 WL 271059, *7 – 8 (D. N.J. Jan. 3, 2025) (rejecting the plaintiffs' standing based on their "speculative allegation of future potential misuse [that] requires a 'highly attenuated chain of possibilities' which 'requires guesswork'").

Plaintiff offered no factual support for the conclusory argument that his information lost value. Plaintiff does not explain exactly how the value of his information has been damaged, the amount of the purported decrease, or how that would directly impact them – i.e. that he would somehow have monetized his own information in a way that they now cannot do to the same extent. Accordingly, he cannot rely on this theory to establish standing.

**B. Plaintiff Failed to State A Claim Upon Which Relief Can be Based**

To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2009)). A complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (citing *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Plaintiff's factual allegations "must establish more than a sheer possibility that a defendant has acted unlawfully." *Perrill v. Equifax Info. Servs., LLC*, 205 F.Supp.3d 869, 872 (W.D. Tex. 2016).

Plaintiff failed to plead sufficient facts to support any of the causes of action set forth in the Complaint.

**i. Choice of Law**

As an initial matter, the Court must decide which state's law to apply. A federal court sitting in diversity jurisdiction applies the choice of law rules from the forum state. *Benchmark Elecs. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir. 2003) (internal citation omitted). Under Texas choice of law rules, "courts look to 'the law of the state with the most significant relationship to the particular substantive issue . . . to resolve that issue, except in those contract cases in which

the parties have agreed to a valid choice of law clause." *Taylor v. U.S. Bank Nat'l Ass'n*, No. 12-3550, 2015 WL507526, at *5 (S.D. Tex. Feb. 6, 2015) (internal citation and quotation marks omitted). In making this determination, courts consider factors including "1) the place where the injury occurred; 2) the place where the conduct causing the injury occurred; 3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and 4) the place where the relationship, if any, between the parties is centered." *Id.* (citing Restatement (Second) of Conflict of Laws § 145(2) (1971)).

Plaintiff is a resident of California. Compl. ¶ 21. Access TeleCare's principal place of business is Texas, and "a substantial part of the event giving rise to this action occurred" in Texas. *Id.* ¶¶ at 31, 34. As such, for purposes of this Motion, Access TeleCare applies Texas law.

**ii. Plaintiff Failed to State a Claim for Negligence**

Under Texas law, the elements of a cause of action for negligence are (1) a legal duty owed by one person to another; (2) a breach of that duty; (3) the breach was an actual cause of injury; and (4) actual injury. *See Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). "Because actual injury is an element of a negligence claim, [a]n action for negligence cannot be maintained unless some damages result therefrom." *Waxler v. Household Credit Servs., Inc.*, 106 S.W.3d 277, 280 (Tex. App.-Dallas 2003, no pet.).

Plaintiff alleges that Access TeleCare owed him a duty to exercise reasonable care in safeguarding and protecting his information, and Access TeleCare should have known the risks of collecting such information. Compl. ¶¶ 125-129. Plaintiff alleges Access TeleCare breached its duty by failing to exercise reasonable care, and as a result, Plaintiff sustained damages. *Id.* at ¶¶ 137-138.

Plaintiff has not alleged any factual information in the Complaint that show he suffered any damages, such as fraud or identity theft, as traceable to Access TeleCare's Incident. Instead,

Plaintiff provides a laundry list of generalized "damages" including "imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft". *Id.* at ¶ 137. Plaintiff's injury allegations center on potential injuries that could arise at some unknown point in the future.

These are not compensable damages for a negligence claim in data breach litigation in Texas. The Southern District of Texas issued a ruling in *Logan* where it determined that two plaintiffs' allegations of spam were insufficient injuries to confer standing, noting that receipt of spam is not unusual in modern life. *Logan*, 2024 WL 3489208, *5. The court found that no harm resulted from the plaintiffs' receipt of spam messages and based its reasoning on other courts that found similar spam allegations do not "plausibly suggest" that any misuse of the plaintiffs' information occurred from the data incident. *Id*. (citing *Legg*, 574 F.Supp.3d at 993). The *Logan* court also rejected the plaintiffs' damages claims based on a speculative risk of future harm, mitigation efforts, and diminution in value of information as insufficient types of damages. *Id*. at *6 – 7.

Similarly, in *In re ESO*, the Western District of Texas evaluated the plaintiffs' allegations of spam calls, texts, and/or emails and found that "[a]bsent more factual allegations, this increase in spam cannot be attributed to [the defendant's] data breach." *In re ESO Solutions, Inc. Breach Litigation*, No. 1:23-cv-1557-RP, 2024 WL 4456703, *5 (W.D. Tex. July 30, 2024). The court noted that spam has become "very common in this digitized world" and acknowledged that many courts declined to find receipt of spam constituted a valid injury. *Id*. (citing *McCombs v. Delta Grp. Elecs., Inc.*, 676 F.Supp.3d 1064, 1074 (D.N.M. 2023)); s*ee also*, *Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010) (data breach plaintiffs "have not established a cognizable injury for purposes of their negligence claim" because "[t]he alleged injuries here stem from the

danger of future harm"); *Storm v. Paytime, Inc.*, 90 F. Supp. 3d 359, 367-68 (M.D. Pa. 2015) (no actual injury based on preventative measures taken to prevent future injury in connection with data breach); *Pulliam v. West Technology Group, LLC*, 8:23-cv-159, 2024 WL 356777, at *10 (D. Neb. Jan. 19, 2024) (analyzing plaintiffs' allegations of harm in a data breach and determining that an increase in spam messages is not a cognizable harm for Article III standing); *McCombs v. Delta Grp. Electronics, Inc.*, 676 F. Supp. 3d 1064, 1074 (D. N.M. 2023) (rejecting plaintiff's argument that increased spam communications after the defendant's data breach were a concrete harm because the plaintiff had not plausibly asserted a nexus between the incident and the spam communications)). The Western District of Texas further reasoned that the plaintiffs' claims for lost time, heightened risk of harm, diminished value of PII, and benefit of the bargain were insufficiently concrete injuries and dismissed these allegations. *In re ESO*, 2024 WL 4456703, *4 – 7.

Without alleging any actual misuse, Plaintiff failed to establish the essential element of damages. This Court should follow the rationale set forth in *Logan* and *In re ESO*, and dismiss Plaintiff's negligence claim with prejudice.

**iii. Plaintiff Failed to State a Claim for Negligence *Per Se***

To establish negligence *per se*, a plaintiff must prove: (1) the defendant's act or omission is in violation of a statute or ordinance; (2) the injured person was within the class of persons which the ordinance was designed to protect; and (3) the defendant's act or omission proximately caused the injury." *Ambrosio v. Carter's Shooting Ctr., Inc.*, 20 S.W.3d 262, 265 (Tex.App.-Houston 2000, pet. denied). Negligence *per se* is not a separate cause of action that exists independently of a common-law negligence cause of action. *Zavala v. Trujillo*, 883 S.W.2d 242, 246 (Tex.App.-El Paso 1994, writ denied). Rather, negligence *per se* is merely one method of proving a breach of duty, a requisite element of any negligence cause of action. *Reynolds v.*

*Murphy*, 188 S.W.3d 252, 267 n.20 (Tex.App.-Fort Worth 2006, pet. denied). Significantly, a statute is not an appropriate basis for a negligence *per se* claim when "a legislative body declines to provide for an individual private right of action in a statute and instead provides a comprehensive regulatory scheme with limited private remedies." *Armstrong v. Southwest Airlines Co.*, No. 3:20-CV-3610-BT, 2021 WL 4391247, at *3 (N.D. Tex.-Dallas Sept. 24, 2021) (citing *Reeder v. Daniel*, 61 S.W.3d 359, 362-63 (Tex. 2001).

Plaintiff relies on the Health Insurance Portability and Accountability Act ("HIPAA") Privacy Rule, specifically 45 C.F.R. § 164, as well as Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45 in support of the negligence *per se* portion of their negligence claim. Compl. at ¶¶ 270 – 287.

Plaintiff's claim that HIPAA can serve as a basis for negligence *per se* is without merit because HIPAA does not provide a private cause of action. *See Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006) (holding that HIPAA does not provide for a private cause of action). Courts within the Fifth Circuit continue to follow this precedent. In *Walters v. Blue Cross and Blue Shield of Texas, Inc.*, the court dismissed the plaintiff's negligence *per se* claim, holding that HIPAA is not a proper basis for the claim under Texas law. No. 3:21-cv-902735, 2022 WL 902735 at *6 (N.D. Tex. Mar. 28, 2022); *see also Smith v. American Pain and Wellness, PLLC*, No. 4:34-cv-295, 2024 WL 4028050, at *9 (E.D. Tex. Sept. 3, 2024). Therefore, Plaintiff cannot sustain a negligence *per se* claim on this basis.

Further the Fifth Circuit also determined that negligence *per se* claims are not cognizable under the FTC Act. *Johnson v. Sawyer*, 47 F.3d 716, 719 (5th Cir. 1995). In *Johnson*, the Fifth Circuit held that "for [FTC Act] purposes, a federal regulation cannot establish a duty owed to the plaintiff under state law." *Id*. at 729. The Western District of Texas also dismissed the plaintiffs'

negligence *per se* claim framed under both HIPAA and the FTC Act in a data privacy class action. *In re ESO*, 2024 WL 4456703, at *10-11. The court affirmed that the "Fifth Circuit has made clear there is no private cause of action for violation of the FTC Act." *Id.* at **11* (citing *Arquero v. McGinnis Tessitore Wutscher LLP*, No. A-12-cv-432 LY, 2013 WL 12393918, at *3 (W.D. Tex. Feb. 5, 2023)).

Plaintiff's negligence *per se* claim fails because HIPAA and the FTC Act do not provide for a private right of action. Furthermore, Plaintiff failed to plead any cognizable, concrete damages. This Court should dismiss Plaintiff's negligence *per se* claim with prejudice.

**iv. Plaintiff Failed to State a Claim for Breach of Third-Party Beneficiary Contract**

Under Texas law, there is a "presumption against, not in favor of, third-party beneficiary agreements." *Corpus Christi Bank and Trust v. Smith*, 525 S.W.2d 501, 503 – 504 (Tex. 1975); *see also Tarasiewicz v. PNC Bank*, No. SA-22-CV-00816-XR, 2023 WL 2940025, *3 (W.D. Tex. Apr. 13, 2023). "[A] third party beneficiary will not be recognized unless the intent to make him or her so is clearly written or evidenced in the contract." *Maddox v. Vantage Energy, LLC*, 361 S.W.3d 752, 757 (Tex.App.-Fort Worth 2021, pet denied). Under Texas law, a party "seeking to establish third-party beneficiary status must demonstrate that the contracting parties 'intended to secure a benefit to that third party' and 'entered into the contract directly for the third party's benefit.'" *Sojitz Energy Venture, Inc. v. Union Oil Co. of California*, 394 F.Supp.3d 687, 710 (S.D. Tex. Houston Div. 2019). A Texas court "will not create a third-party beneficiary contract by implication." *MCI Telecomms. Corp. v. Texas Util. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999). When determining whether a third party can enforce a contract, the contracting parties' intent is controlling. *Id*. "All doubts must be resolved against conferring third-party beneficiary status." *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011).

Plaintiff asserts that Access TeleCare entered into written contracts with its clients to provide telemedicine services. Compl. ¶ 140. Plaintiff further alleges Access TeleCare breached its contracts with its clients when Access TeleCare suffered the Incident. *Id.* at ¶ 143.

Two courts in the Western District of Texas dismissed the plaintiffs' third-party beneficiary claims in data privacy class actions. In *In re ESO*, the court reasoned that the defendant contracted with the plaintiffs' healthcare providers to provide services for hospitals and healthcare facilities, and that any benefit to the plaintiffs was incidental. *In re ESO*, 2024 WL 4456703, at *11. The court further explained that the plaintiffs failed "to allege a clear intent on the part of [the defendant] to benefit" them. *Id*. In dismissing the claim, the court determined that receipt of "an incidental benefit from a contract to which he is not a party does not give that person a right of action to enforce the contract." *Id*. (citing to *MCI Telecommunications Corp. v. Tex. Utilities Elec. Co*., 995 S.W.2d 647, 651 (Tex. 1999)). Similarly, in *Bruno*, the court acknowledged that the primary purpose of the defendant's contract was to provide medical insurance services to its clients, and that while the plaintiff "may have incidentally benefited from the contract," that is insufficient to "confer third party beneficiary status." *Bruno v. Robert Donohoe, as Trustee of the Texas Medical Liability Trust*, No. 1:23-cv-01183-DAE, 2024 WL 5305079, *9 (W.D. Tex. Oct. 25, 2024).

Here, Plaintiff has not identified any facts supporting the argument that Access TeleCare entered into contracts with its clients with the intent to directly benefit Plaintiff. Instead, Plaintiff asserts conclusory allegations that fail to establish the required element of intent. The primary purpose of Access TeleCare's contracts were to provide "telemedicine services." Compl. ¶ 140. While Plaintiff "may have incidentally benefited from the contract," that is insufficient to "confer third party beneficiary status." *Bruno,* 2024 WL 5305079, *9.

Furthermore, Plaintiff's claims fail to allege that he suffered any concrete, cognizable injuries beyond the mere risk of potential future harm. Texas law is clear that parties may not recover for speculative damages. *S. Elec. Servs., Inc. v. City of Houston*, 355 S.W.3d 319, 324 (Tex.App.-Houston [1st Dist.] 2011, pet. denied); *City of Dallas v. Vills. of Forest Hills, L.P., Phase I*, 931 S.W.2d 601, 605 (Tex.App.-Dallas 1996, no writ).

Accordingly, Plaintiff has not suffered any valid type of damages under Texas law and failed to explain how any benefit provided to him would have been more than incidental. As such, this cause of action must be dismissed for failure to state a claim.

**v. Plaintiff Failed to State a Claim for Unjust Enrichment**

Unjust enrichment is not an independent claim for relief, but a theory of recovery "tied to other claims for relief and relevant damages calculations." *Sanchez v. Bank of S. Tex.*, 494 F.Supp.3d 421, 440 (S.D. Tex. 2020). Without any other claims for relief, Plaintiff is not entitled to recovery under unjust enrichment.

Under Texas law, unjust enrichment occurs when a person has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain. *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex.App.-Dallas 2009, pet. denied). "A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). The Texas Supreme Court has cautioned that "[u]njust enrichment is not a proper remedy merely because it 'might appear expedient or generally fair that some recompense be afforded for an unfortunate loss' to the claimant." *Heldenfels Bros.*, 832 S.W.2d at 42 (quoting *Austin v. Duval*, 735 S.W.2d 647, 649, (Tex.App.-Austin 1987, writ denied)).

Plaintiff alleges that he conferred a monetary benefit upon Access TeleCare in the form of his private information in exchange for adequate data security. Compl. ¶ 148. Plaintiff alleges that Access TeleCare enriched itself by saving the costs it reasonably should have expended on data security measures. *Id*. at ¶ 156.

In 2024, three district courts in Texas dismissed the plaintiffs' unjust enrichment claims in data privacy class actions. In *Logan*, the Southern District of Texas found that there was no consideration between the parties and the plaintiff did not confer any benefit on the defendant, such as paying the defendant to store their data, because the payment came from the defendant's customers. *Logan*, 2024 WL 3489208, at *10 – 11. The *Logan* court emphasized that the plaintiffs did not have a direct relationship with the defendant and further reasoned that personal information "does not have an inherent monetary value." *Id.*

Similarly, in *Bruno*, the court rejected the plaintiff's unjust enrichment claim, determining that the primary purpose of a contract was to provide medical insurance, the defendant provided that service, and it was not unjust for the defendant to retain monetary compensation for services rendered. *Bruno*, 2024 WL 5305079, at *9. The court highlighted that the primary purpose of the parties' relationship was "not necessarily to secure reasonable data privacy and security practices and procedures" for the plaintiffs. *Id*.

Like the defendants in *Logan* and *Bruno*, Access TeleCare did not have a direct relationship with Plaintiff and Plaintiff never conferred any monetary benefits to Access TeleCare. Instead, Plaintiff had a relationship with employers or benefits providers, who may have contracted with Access Telecare for third-party benefit administration and data management services.

In *In re ESO*, the court determined that the plaintiffs did not establish the defendant took undue advantage of the plaintiffs and dismissed the claim with prejudice. *In re ESO*, 2024 WL

4456703, at *11. Like the defendant in *In re ESO*, Access TeleCare did not take undue advantage of the Plaintiff. Plaintiff makes no factual allegations that the purported benefit received by Access TeleCare was obtained by fraud, duress, or taking undue advantage, nor does Plaintiff allege Access TeleCare engaged in unconscionable conduct. Accordingly, Plaintiff failed to plead the required elements of an unjust enrichment claim under Texas law, and this cause of action should be dismissed with prejudice.

**vi. Plaintiff Failed to State a Claim for Breach of Fiduciary Duty**

Under Texas law, the elements of a breach-of-fiduciary-duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in an injury to the plaintiff or benefit to the defendant. *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex.App.–Dallas 2006, pet. denied).

Plaintiff alleges that "[a]s a telemedinie care provider, Defendant has a fiduciary relationship to its clients and their patients, like Plaintiff and the Class Members." Compl. ¶ 164. Plaintiff also alleged that as a direct and proximate result of Access Telecare's Incident, Plaintiff suffered from injuries including theft of his information, mitigation costs, costs associated with purchasing credit monitoring, lowed credit scores, "imminent and certainly impending injury" from the increased risk of fraud and identity theft, diminution in value of his information, loss of privacy, and lost time *Id.* at ¶ 173.

"A fiduciary relationship may arise from informal moral, social, domestic, or personal dealings, as well as from technical relationships." *See Brazosport Bank v. Oak Park Townhouses*, 889 S.W.2d 676, 683 (Tex.App.-Houston [14th Dist.] 1994, writ denied); see also *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex.App.-Dallas 2006, pet. denied) ("A fiduciary relationship may be formal or informal. Fiduciary duties arise as a matter of law in certain formal relationships").

Plaintiff's Complaint fails to sufficiently allege any factual basis for a relationship between Plaintiff and Access TeleCare, which would rise to the level of a fiduciary relationship wherein Access TeleCare owed Plaintiff any of the alleged duties. Specifically, Plaintiff alleges that he is "unaware how Defendant obtained his Private Information." Compl. ¶ 22. Plaintiff failed to demonstrate that a fiduciary relationship existed between Plaintiff and Access TeleCare.

In addition, Plaintiff's breach of fiduciary duty claim fails to allege that Plaintiff and Class Members suffered any concrete, cognizable injuries beyond the mere future risk of injury as a result of the incident. Plaintiff has not alleged any actual out-of-pocket monetary loss due to the cybercriminal attack resulting in the Incident. Nor does Plaintiff plead specifics as to how much time or money he spent dealing with the Incident as a result of the breach and instead put forth only general and speculative allegations. Under Texas law, parties may not recover for speculative damages. *S. Elec. Servs., Inc.*, 355 S.W.3d at 324; *Vills. of Forest Hills, L.P.*, *Phase I*, 931 S.W.2d at 605. Plaintiff has failed to allege any harm, which materialized and stem from the alleged breach of duty, and thus, the Court must dismiss Plaintiff's claim for breach of fiduciary duty.

### C. Alternatively, Immaterial and Impertinent Allegations Should be Stricken

If the Court does not dismiss the Complaint, it should strike the immaterial and impertinent allegations concerning identity theft that have nothing to do with the parties or facts of this case.

Federal Rule of Civil Procedure 12(f) permits a court to strike immaterial and impertinent allegations from a pleading on its own or upon motion by a party. *See* Fed. R. Civ. P. 12(f). A motion to strike under Rule 12(f) should be granted "when the pleading to be stricken has no possible relation to the controversy." *DynaStudy, Inc. v. Houston Indep. Sch. Dist.*, 325 F. Supp. 3d 767, 772 (S.D. Tex. 2017) (internal citation and quotation marks omitted).

Instead of focusing solely on the relevant data security incident and Plaintiff's individual experiences, Plaintiff added extraneous material concerning the actions of identity thieves and statistics about cybercrime. *See* Compl. ¶¶ 38 – 48, 56 - 104. Plaintiff pled no actual facts regarding the motivations of the cybercriminals who executed the attack on Access TeleCare. To make up for that missing information, Plaintiff includes immaterial and generalized allegations that are designed to improperly inflame the issues and lend weight to the alleged risk of future identity theft. Further, many of the cites are outdated blog posts that do not indicate a date last visited. Plaintiff should limit the Complaint to the Access TeleCare data incident and his individual experiences. As such, the Court should strike paragraphs 38 – 48 and 56 – 104 pursuant to Rule 12(f).

## IV. CONCLUSION

For all the foregoing reasons, Defendant Access TeleCare respectfully requests that Plaintiff's Complaint be dismissed in its entirety with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In the event the Court does not dismiss the Complaint, Access TeleCare respectfully requests that it strike paragraphs 38 – 48 and 56 – 104 from the Complaint pursuant to Federal Rule of Civil Procedure 12(f).